**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:23-CV-191-RJC-DCK**

| | | |
|---|---|---|
| **ANDREW O'DARIUS ROLLINSON,** | ) | |
| **ANDREW JACKSON ROLLINSON, and** | ) | |
| **VANESSA FRI-CIA ROLLINSON,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| **TOP TIER SOLAR SOLUTIONS, LLC,** | ) | |
| **JACOB P. VAN WYNEN, SAMUEL VAN** | ) | |
| **WYNEN, MARK WAGONER, JACOB** | ) | |
| **HOVLEY, ANTHONY FEICK, PETE** | ) | |
| **VAN WYNEN, and AUSTIN TAYLOR,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

THIS MATTER IS BEFORE THE COURT on Defendants Top Tier Solar Solutions, LLC, Jacob P. Van Wynen, Samuel Van Wynen, Mark Wagoner, Jacob Hovley, Anthony Feick, and Pete Van Wynen's "Motion To Dismiss Plaintiffs' Amended Complaint" (Document No. 19) and "Defendant Austin Taylor's Motion To Dismiss" (Document No. 21). These motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and are now ripe for disposition. Having carefully considered the arguments, the record, and applicable authority, the undersigned will respectfully recommend that Document No. 19 be <u>granted</u> in part and <u>denied</u> in part and that Document No. 21 be <u>granted</u>.

## I. BACKGROUND

Plaintiffs' lawsuit was initiated with the filing of a "Complaint" in Mecklenburg County Superior Court on February 28, 2023. <u>See</u> (Document No. 1-1). Defendants removed the case to this court on March 31, 2023. <u>See</u> (Document No. 1). On May 5, 2023, Defendants filed motions

to dismiss.  <u>See</u> (Document Nos. 8, 9).  Plaintiffs Andrew O'Darius Rollinson, Andrew Jackson Rollinson, and Vanessa Fri-Cia Rollinson (Andrew Jackson Rollinson and Vanessa Fri-Cia Rollinson are collectively, "the Rollinson parents") (collectively, "Plaintiffs") thereafter filed an "Amended Complaint" (Document No. 12) on May 22, 2023.  Plaintiffs are proceeding *pro se*.  Plaintiffs bring their claims against Defendants Top Tier Solar Solutions, LLC ("Top Tier"), Jacob P. Van Wynen, Samuel Van Wynen, Mark Wagoner, Jacob Hovley, Anthony Feick, Pete Van Wynen, and Austin Taylor (collectively, "Defendants").

Plaintiffs bring twelve claims against Defendants:  (1) for race discrimination in violation of 42 U.S.C. § 1981;  (2) for hostile work environment in violation of 42 U.S.C. § 1981;  (3) for retaliation in violation of 42 U.S.C. § 1981;  (4) for retaliation in violation of the North Carolina Retaliatory Employment Discrimination Act, N.C. Gen. Stat. § 95-241(a);  (5) for retaliation in violation of the Fair Labor Standards Act;  (6) for fraudulent misrepresentation;  (7) for unfair and deceptive trade practices in violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. §75-1.1;  (8) for fraud and conspiracy to commit fraud;  (9) for breach of contract;  (10) for embezzlement in violation of N.C. Gen. Stat. § 1-538.2;  (11) for violation of the North Carolina Wage & Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, et seq.; and (12) for injunctive relief.  <u>See</u> (Document No. 12).  Plaintiffs' claims arise out of two, largely unrelated sets of facts:  Plaintiff Andrew O'Darius Rollinson's former employment relationship with Top Tier and his eventual termination by the company for alleged racially discriminatory reasons, and Plaintiffs Andrew Jackson Rollinson and Vanessa Fri-Cia Rollinson's (Plaintiff Andrew O'Darius Rollinson's parents) contract with Top Tier for the installation of solar panels on their home that they allege went wrong.  The undersigned will explore these claims below.

2

Defendants Top Tier Solar Solutions, LLC, Jacob P. Van Wynen, Samuel Van Wynen, Mark Wagoner, Jacob Hovley, Anthony Feick, and Pete Van Wynen's "Motion To Dismiss Plaintiffs' Amended Complaint" (Document No. 19) was filed June 20, 2023. "Defendant Austin Taylor's Motion To Dismiss" (Document No. 21) was also filed June 20, 2023. "Plaintiffs' Response To Defendants' Motion To Dismiss Amended Complaint" (Document No. 22) – what appears to be Plaintiff Andrew O'Darius Rollinson's response – was filed July 5, 2023. "Co-Plaintiff's Response To Defendants' Motion To Dismiss Amended Complaint" (Document No. 23) – Plaintiff Andrew Jackson Rollinson's response – and "Co-Plaintiff's Response To Defendants' Motion To Dismiss Amended Complaint" (Document No. 24) – Plaintiff Vanessa Fri-Cia Rollinson's response – were filed July 5, 2023. Defendant Top Tier, Jacob P. Van Wynen, Samuel Van Wynen, Mark Wagoner, Jacob Hovley, Anthony Feick, and Pete Van Wynen's "Reply In Support Of Motion To Dismiss Plaintiffs' Amended Complaint" (Document No. 25) was filed July 12, 2023. "Defendant Austin Taylor's Reply In Support Of His Motion To Dismiss Plaintiffs' Amended Complaint" (Document No. 26) was also filed July 12, 2023.

The pending motions have been fully briefed and are ripe for review and a recommended disposition to the Honorable Robert J. Conrad, Jr.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

"[D]istrict courts evaluating a *pro se* Plaintiff's claims are obliged to construe such complaints liberally – 'however inartfully pleaded' – because *pro se* complaints 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" McCaskey v. United States Postal Service, 3:18-CV-411-RJC-DCK, 2021 WL 1537793, at *3 (W.D.N.C. Mar. 26, 2021) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

## III. DISCUSSION

The Court will analyze the claims in the order in which Plaintiffs' Amended Complaint lays them out. Notably, the undersigned highlights that while it is not entirely clear, it appears that the breach of contract claim and the claim for injunctive relief are the only claims specific to the Rollinson parents. The other claims appear specific to Plaintiff Andrew O'Darius Rollinson's employment with Top Tier.

### Claim One: Race Discrimination in Violation of 42 U.S.C. § 1981

"Congress passed § 1981 to guarantee to all persons in the United States the same right…to make and enforce contracts…as is enjoyed by white citizens." Nadendla v. WakeMed, 24 F.4th 299, 305 (4th Cir. 2022) (internal quotations and citations omitted). "When addressing race-discrimination claims under § 1981, courts apply the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Giles v. Nat'l Railroad Passenger Corp., 59 F.4th 696, 703 (4th Cir. 2023). "To establish a prima facie case [of race discrimination] under both Title VII and 42 U.S.C. § 1981, a plaintiff must show (1) his membership in a protected class; (2) his satisfactory job performance; (3) an adverse employment action; and (4) similarly situated employees outside the protected class who received more favorable treatment." Tabb v. Bd. of Educ. of Durham Public Schools, 29 F.4th 148, 157 (4th Cir. 2022). Ultimately, "[a] plaintiff must also show that the interference with a contractual interest would not have happened but for plaintiff's race." Nadendla, 24 F.4th at 305.

However, a plaintiff need not plead a *prima facie* case of race discrimination at the motion to dismiss stage. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 515 (2002). All that a plaintiff must do is "allege facts that support a claim for relief" – it is not necessary to include evidence as proof in support of his or her claim in the complaint. Whittington v. North Carolina Dep't of

Juvenile Justice and Delinquency Prevention, 2006 WL 2862278, at *5 (W.D.N.C. Oct. 4, 2006) (quoting Bass v. E.I. Dupont De Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003)). Indeed, while ultimately, success on a § 1981 claim requires that a plaintiff "establish both that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest," at this stage of the litigation it is sufficient that a plaintiff "allege[s] facts that, if accepted as true, allow the court to draw a reasonable inference as to those legal requirements." Nadendla, 24 F.4th at 305. And, with respect to individuals sued under section 1981, liability attaches "only for his or her own intentional actions that cause an infringement of section 1981." Benjamin v. Sparks, 173 F. Supp. 3d 272, 283 (E.D.N.C. 2016).

Plaintiff (seemingly Andrew O'Darius Rollinson – the undersigned will refer to him as "Plaintiff" throughout the discussion of all claims except for claims nine and twelve) alleges this claim against Top Tier, Samuel Van Wynen, Pete Van Wynen, and Jacob Hovley. See (Document No. 12, pp. 17-18). Importantly, with respect to Pete Van Wynen, the only allegations in Plaintiffs' Amended Complaint against him include that he "called Mr. Rollinson, and requested for him to explain the Enphase Energy System to Trevor Fenton (Caucasian male[)]," and that he "made false reference to Trevor Fenton as Project Manager, instead of a Sales [Representative]." Id. at p. 9. As Defendant states, "Rollinson does not allege that Pete Van Wynen made any race-related statements or had any role in Rollinson's purported demotion or termination[, or that he] had authority to demote or terminate him." (Document No. 20, p. 6). Based on these allegations alone, it is difficult to see how any section 1981 race discrimination claim could be made against Pete Van Wynen – there is no allegation that he "had the capacity to terminate [his] employment" or any allegation of "racially discriminatory animus." Benjamin, 173 F. Supp. 3d at 283. Therefore,

the undersigned will respectfully recommend that the section 1981 race discrimination claim against Pete Van Wynen be dismissed.

Defendant Samuel Van Wynen is alleged to be the CEO of Top Tier. (Document No. 12, p. 3). Plaintiff alleges that Samuel Van Wynen "uploaded a six-minute audio recording to [a company] chatroom," in which Defendant "described Mr. Rollinson as 'not able to be a team player', 'a prima donna', 'a Cancer to the team'," and further said that he didn't "care if [Rollinson was] the Michael Jordan on our team." Id. at p. 7. Plaintiff further alleges that Samuel Van Wynen then "specifically recognized, validated, and endorsed two Caucasian employees similarly-situated to Plaintiff." Id. at p. 8. Given that Defendant Samuel Van Wynen is the CEO of Top Tier, he obviously has the capacity to terminate an individual's employment with the company. Based on the above statements, the undersigned finds that Plaintiff has plausibly alleged a claim for race discrimination in violation of section 1981 against Samuel Van Wynen – the motion to dismiss this claim against this Defendant is respectfully recommended to be denied.

Plaintiff alleges that Defendant Jacob Hovley is the "Regional VP of Sales" for Top Tier. Id. at p. 4. Plaintiff alleges that during employee training, Defendant Hovley practiced sales pitches with the new hires (of which Rollinson was one) through role-playing. Id. at p. 5. During this role-playing exercise, "Rollinson asked Hovley (portraying, 'the homeowner'), for his name. Hovley answered 'Frederick Douglass'…[and later] 'Harriet Tubman' and 'Sojourner' Truth.'" Id. at pp. 5-6. "Rollinson asked, 'Of all the names you could think of, you're Frederick Douglass?' Hovley said, 'We're in the South. You may encounter a racist on the doors, and you'll need to know how to respond." Id. at p. 6. Plaintiff contends that "[n]o such comments were made to trainees outside of the Plaintiff's protected class." Id. At this stage of the litigation, the undersigned finds it plausible that there could be racially discriminatory animus motivating

Defendant Hovley's comments – discovery is necessary to flesh out these facts. Thus, the undersigned will respectfully recommend that the motion to dismiss the section 1981 race discrimination claim against him be denied.

With respect to Top Tier, the analysis is different. Plaintiff has clearly alleged that he is African-American, that he "was performing his job in an excellent manner," and that he was terminated. (Document No. 12, pp. 5, 14). Therefore, Plaintiff has plausibly alleged the first three elements of a successful § 1981 claim. See Tabb, 29 F.4th at 157. Furthermore, as discussed with respect to the other Defendants, Plaintiff clearly alleges that Caucasian employees were not treated in the same way as he was. At this early stage, the undersigned will respectfully recommend that Top Tier's motion to dismiss the section 1981 race discrimination claim against it be denied.

**Claim Two: Hostile Work Environment in Violation of 42 U.S.C. § 1981**

To state a § 1981 hostile work environment claim, a plaintiff must allege that there was "harassment that was (1) unwelcome, (2) based on race, (3) sufficiently severe or pervasive to alter the terms and conditions of employment and create an abusive atmosphere, and (4) imputable to the employer." Kenan v. Armada Hoffler Constr., Co., 3:18-CV-490-GCM, 2020 WL 998758, at *2 (W.D.N.C. Mar. 2, 2020). "A hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Sanchez v. Whole Foods Market Grp., Inc., 2022 WL 3369521, at *2 (4th Cir. Aug. 16, 2022) (quoting Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015)). "[T]he work environment must be both subjectively and objectively offensive." Kenan, 2020 WL 998758, at 2. "[P]laintiffs must clear a high bar in order to satisfy the severe or pervasive test." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008). "In measuring the severity

of harassing conduct, the status of the harasser may be a significant factor." Boyer-Liberto, 786 F.3d at 278.

Plaintiff alleges his hostile work environment claim against both Top Tier and Samuel VanWynen. At this stage of the litigation, based on the allegations alleged in Plaintiffs' Amended Complaint, the undersigned finds Plaintiff's allegations sufficient to state a hostile work environment claim against both Top Tier and Samuel VanWynen. Given that Samuel VanWynen is the CEO, the undersigned assumes that the fourth element of a hostile work environment claim is satisfied: his actions are imputable to Top Tier. See Kenan, 2020 WL 998758, at *2. At this point, Plaintiff's allegations (specific to Samuel VanWynen) of race-based commentary or unwelcome conduct are limited to the incident involving Samuel VanWynen uploading "a six-minute audio recording to the [company] chatroom, ostracizing and ridiculing Mr. Rollinson to an audience of 50+ colleagues," in which Rollinson was described in a number of objectively negative ways. (Document No. 12, p. 7). The only race-based comment, however, was a comparison of Rollinson to Michael Jordan – Samuel Van Wynen allegedly said "If you disrespect the leaders of this company, you're gone! You don't get a second chance…[] I don't care if you're the Michael Jordan on our team." Id.

And, with respect to other race-based comments, Defendant Jacob Hovley used a number of prominent African-American names in a role-playing exercise – pretending to answer the door as an "African-American[] born into slavery." Id. at p. 6. When asked why, Hovley (who was training Plaintiff and thus plausibly could be considered his supervisor) insisted that he was preparing Rollinson for encountering racist homeowners on sales visits. Id. At least at this stage of the litigation, such race-based comments are plausibly unwelcome. Whether these comments were severe or pervasive such that they created a hostile work environment is a fact-intensive

9

inquiry best left to a later stage of the litigation. Given the allegations here, the undersigned will respectfully recommend that the motion to dismiss this claim be denied.

**Claim Three: Retaliation in Violation of 42 U.S.C. § 1981**

"In order to state a plausible claim of retaliation [under § 1981], a plaintiff must allege that: (1) he engaged in protected activity under the statute, (2) he suffered a materially adverse employment action, and (3) a causal link exists between the protected activity and the employment action." Arora v. Daniels, 3:17-CV-134-GCM, 2018 WL 1597705, at *7 (W.D.N.C. April 2, 2018).

Plaintiff alleges this claim against Top Tier, Samuel VanWynen, Jacob VanWynen, Mark Wagoner, Jacob Hovley, and Anthony Feick. (Document No. 12, p. 19). Filing a charge of discrimination with the EEOC constitutes protected activity sufficient to satisfy the first element. See King v. United Way of Central Carolinas, Inc., 2010 WL 1958128, at *6 (W.D.N.C. May 14, 2010). And, termination is a materially adverse employment action sufficient to satisfy the second element of a retaliation claim under § 1981. With respect to the causal link between Rollinson's alleged filing of a charge of discrimination with the EEOC and his termination, the allegations are thin. Nonetheless, "[t]emporal proximity between the protected activity and the materially adverse action may suffice to establish a causal connection." Id. (citing Matvia v. Bald Head Island Mgmt., Inc., 259 F.3d 261, 271 (4th Cir. 2001)). Plaintiffs' Amended Complaint does not state with clarity on what date Plaintiff was terminated. He alleges that he filed the EEOC charge of discrimination on February 23, 2022. (Document No. 12, p. 14). At some point thereafter, but before March 24, 2022, it seems implied from the allegations in the Amended Complaint that Plaintiff was terminated. See id. at 16 ("[o]n March 24, 2022, Top Tier retaliated against Rollinson, in its

response to his Google Review, by referring to him as 'former disgruntled employee,' thus, terminated his employment").

Still, Plaintiff does not allege that Defendants were aware of his filing of the EEOC charge of discrimination.[1]  Instead, he conclusorily alleges that Defendants "causally connected the protected activity and the challenged activity." Id. at p. 19.  Given the lack of specificity about the actual date of termination, leaving the Court to guess about how close in time the EEOC charge filing and the termination were to one another, the undersigned will respectfully recommend that Plaintiff's retaliation claim be dismissed.  Plaintiff has not plausibly alleged a causal link between protected activity and his termination.

**Claim Four: Retaliation in Violation of the Retaliatory Employment Discrimination Act ("NCREDA")**

Plaintiff's fourth claim is for retaliation in violation of NCREDA – alleged against Top Tier, Samuel VanWynen, Jacob VanWynen, Mark Wagoner, Jacob Hovley, and Anthony Feick. (Document No. 12, p. 20).  Plaintiff contends that he was retaliated against "for threatening to take action, and in fact taking action under the Wage & Hour Act…[t]he employer knew about the employee's protected conduct," and he was terminated.  Id.

"REDA prohibits retaliation against an employee who 'in good faith does or threatens to…[f]ile a claim or complaint, initiate any inquiry, investigation, inspection, proceeding or other action, or testify or provide information to any person with respect to…[the North Carolina Wage and Hour Act].'"  Hadley v. Duke Energy Progress, LLC, 677 F. App'x 859, 861 (4th Cir. 2017)

---

[1] Defendants take time to analyze why other complaints that Plaintiff made to Top Tier do not qualify as protected activity such that they could form the basis for a section 1981 retaliation claim.  (Document No. 20, p. 15).  However, these other complaints about Plaintiff's commissions are not named as relevant facts under the heading for Plaintiff's section 1981 retaliation claim in the Amended Complaint, and thus, the undersigned will not discuss them here.  See (Document No. 12, p. 19).

(quoting N.C. Gen. Stat. § 95-241(a), (a)(1)(b)).  "To succeed on a REDA claim, a plaintiff must prove that: (1) he exercised his rights to engage in protected activity…; (2) he suffered an adverse employment action; and (3) a causal connection exists between the exercise of the protected activity and the alleged retaliatory action."  Driskell v. Summit Contracting Grp., Inc., 3:16-CV-819-FDW-DSC, 325 F. Supp. 3d 665, 671 (W.D.N.C. 2018) (internal quotations and citations omitted).  And, with respect to protected activity that qualifies, "while REDA does not require filing a formal claim, it does require more than simply complaining to a manager."  Hadley, 677 F. App'x at 862 (citing Pierce v. Atlantic Grp., Inc., 724 S.E.2d 568, 574-75 (N.C. Ct. App. 2012)).

Here, Plaintiff has not alleged specific facts about what he said to Defendants, and the Amended Complaint's section regarding this claim is largely devoid of factual detail.[2]  See (Document No. 12, p. 20).  While Plaintiff does allege that he filed a complaint with the North Carolina Department of Labor, he does not allege in his Amended Complaint on what date this complaint was filed.  Id. at p. 5.  In his response to Defendants' motions to dismiss, Plaintiff alleges that he "filed a complaint with the NCDOL on August 8, 2022."  (Document No. 22, p. 19).  However, as Defendants point out, this date is "months after he was terminated," and thus, there could not possibly be any causal link between the protected activity and the adverse employment action.  (Document No. 25, p. 5).  And, although Plaintiff contends that he "threatened to file such complaints prior to the end of his relationship with Top Tier," the Amended Complaint is noticeably lacking in detail regarding these threats.  (Document No. 22, p. 18);  see (Document No. 12).  Thus, the relevant "protected activity" is not alleged sufficiently for there to exist a

---

[2] Defendants also discuss complaints that Rollinson made to Top Tier supervisors about his commissions.  See (Document No. 20, p. 16).  Given that Plaintiff's Amended Complaint does not reference these complaints in the section regarding this claim, the undersigned will not analyze them.  They could not form the basis of a REDA claim, given that internal grievance conversations are not sufficient.  See Hadley, 677 F. App'x at 862.

plausible claim. Therefore, the undersigned will respectfully recommend that this claim be dismissed.

**Claim Five: Retaliation in Violation of the Fair Labor Standards Act ("FLSA")**

Plaintiff's fifth claim is for retaliation in violation of the FLSA against Top Tier, Samuel VanWynen, Jacob P. VanWynen, and Austin Taylor. Defendants make two primary arguments in support of dismissal of this claim: first, that Plaintiff was an independent contractor, and thus "outside of the scope of the FLSA's protections," and second, that Plaintiff's "purported complaints [about] failure to pay correct commissions, late payments, or underpayments" do not concern "any provision of the FLSA, such as overtime or minimum wage requirements." (Document No. 20, pp. 17-18). The undersigned will address each of these arguments in turn.

"A plaintiff asserting a prima facie claim of retaliation under the FLSA must show that (1) he engaged in an activity protected by the FLSA; (2) he suffered adverse action by the employer subsequent to or contemporaneous with such protected activity; and (3) a causal connection exists between the employee's activity and the employer's adverse action." Darveau v. Detecon, Inc., 515 F.3d 334, 340 (2008).

First, with respect to the argument that Plaintiff is not protected by the FLSA, the undersigned respectfully disagrees with Defendant – at this stage of the litigation, Plaintiff makes a plausible argument that he is an employee for purposes of the FLSA. "To determine whether a worker is an employee or an independent contractor under the FLSA, 'a court considers the 'economic realities' of the relationship between the worker and the putative employer.'" Mode v. S-L Distrib. Co., LLC, 3:18-CV-150-KDB-DSC, 2021 WL 3921344, at *4 (W.D.N.C. Sept. 1, 2021) (quoting Schultz v. Capital Int'l Sec., Inc., 466 F.3d 298, 304 (4th Cir. 2006)). The six factors that guide the undersigned's analysis include:

> (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business.

Mode, 2021 WL 3921344, at *5 (quoting Schultz, 466 F.3d at 304-05). Independent contractors are not covered by the FLSA. See Schultz, 466 F.3d at 304-05.

Plaintiff alleges that Defendant Hovley was assigned as his "direct supervisor," and "subjected [him] to requirements and or treatment likely of an employee, such as micromanagement, assigned work areas, mandatory timesheets, location-tracking prerequisite, harassment concerning work schedule, and providing daily reports by 8pm." (Document No. 12, p. 6). Based on these facts representing Top Tier exerting a heavy degree of control over Plaintiff's work, and the training that Plaintiff alleges he underwent to sell Top Tier's solar panels, the undersigned concludes that it is at least plausible at this point that Plaintiff was an employee for purposes of the FLSA, rather than an independent contractor. See id. at pp. 5-6.

Defendant's second argument is that Plaintiff did not engage in protected activity under the FLSA when he complained about late payments and failure to pay correct commissions. (Document No. 20, p. 17). "As a general rule, an employee cannot succeed on a claim under the FLSA if his average wage for a period in which he works no overtime exceeds minimum wage." Bolick v. Brevard Cty. Sheriff's Dep't, 937 F. Supp. 1560, 1568 (M.D. Fla. 1996) (collecting cases). A plaintiff's claim under the FLSA should fail "where there is no dispute that the plaintiff['s] salary is above the minimum wage, and they are owed no overtime." Id.; see also Hardison v. Healthcare Training Solutions, LLC, 2016 WL 4376725, at *3 (D. Md. Aug. 17, 2016) (asserting rights under FLSA includes a claim "that Defendants failed to pay [the plaintiff's

*minimum* wages, as opposed to [] contractual wages"). As Defendants point out, "Rollinson [in fact] concedes that he has never claimed that Top Tier violated the overtime or minimum wage requirement provisions of the FLSA." (Document No. 22, p. 20). For this reason, the undersigned respectfully recommends that Plaintiff's FLSA retaliation claim be dismissed.

**Claims Six and Eight: Fraudulent Misrepresentation, Fraud, and Conspiracy to Commit Fraud**

Plaintiff's sixth claim is for fraudulent misrepresentation, alleged against Top Tier, Samuel VanWynen, Jacob VanWynen, and Austin Taylor. Plaintiff's eighth claim is for fraud and conspiracy to commit fraud. Each of these claims, as expressed in the Amended Complaint, has to do with Defendants' "act of denying his commissions." (Document No. 12, p. 23). Defendants contend that Top Tier's duty to pay Rollinson commissions are entirely contractual in nature, arising from the Sales Representative Agreement that he signed. <u>See</u> (Document No. 20-2). Plaintiff himself seems to acknowledge this fact: "[p]ursuant to [his] Sales Representative Agreement, [he] earned commissions on sales he made." (Document No. 22, p. 21).

The undersigned concludes that any dispute about Top Tier's failure to pay Plaintiff commissions concerns the Sales Representative Agreement contract. "North Carolina law requires courts to limit plaintiffs' tort claims to only those claims which are identifiable and distinct from the primary breach of contract claim." <u>Babb v. Wade Hampton Golf Club, Inc.</u>, 1:21-CV-333-MOC-WCM, 2022 WL 2760238, at *2 (W.D.N.C. July 14, 2022) (quoting <u>Legacy Data Access, Inc. v. Cadrillion, LLC</u>, 889 F.3d 158, 164 (4th Cir. 2018)). This principle, known as the economic loss rule, requires that "an action in tort must be grounded on violation of a distinct duty to the plaintiff," separate from the contractual duty. <u>Babb</u>, 2022 WL 2760238, at *2. Respectfully, the undersigned recommends that claims six and eight be dismissed.

15

**Claim Seven: Violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1**

Plaintiff's seventh claim is for a violation of the UDTPA, alleged against Top Tier, Samuel VanWynen, and Pete VanWynen. The sole basis for this claim appears to be Plaintiff's allegation that Top Tier's classification of "Trevor Fenton" (a newly hired Caucasian male) as project manager rather than a sales representative caused Plaintiff to suffer because he "shar[ed] valuable information" with Fenton that he otherwise would not have shared with a sales representative. (Document No. 20, pp. 9, 22). Plaintiff contends that this "increased Trevor Fenton's…and ultimately, [the] company's revenue and profit margins." Id. at p. 9.

"[T]he Supreme Court of North Carolina has held that the UDTPA is not intended to apply to all wrongs in a business setting, including employer-employee relations." Fisher v. Walgreens, 1:17-CV-225-MOC-DLH, 2018 WL 3744016, at *7 (W.D.N.C. Aug. 6, 2018) (internal quotations and citations omitted). The Fourth Circuit has emphasized that in North Carolina, the "UDTPA does not normally extend to run-of-the-mill employment disputes." Anderson v. Sara Lee Corp., 508 F.3d 181, 190 (4th Cir. 2007) (citing Durling v. King, 554 S.E.2d 1, 4-5 (N.C. Ct. App. 2001) ("concluding that UDTPA did not apply in employees' suit to recover unpaid sales commissions")). For this reason, and given that Plaintiff's claim alleges a dispute about a failure to pay commissions within his employment relationship with Top Tier, the undersigned respectfully recommends that this claim be dismissed.

**Claims Nine and Twelve: Breach of Contract and Claim for Injunctive Relief**

Claims nine and twelve, for breach of contract and for injunctive relief, respectively, are notably unrelated to the rest of the claims in the Amended Complaint. These state law claims relate to Plaintiffs Andrew Jackson Rollinson and Vanessa Fri-Cia Rollinson (hereinafter, "the

16

Rollinson parents") – Plaintiff Andrew O'Darius Rollinson's parents. In the Amended Complaint, the Rollinson parents allege that they "entered a contract with [Top Tier]…for a 9.315kW residential solar system." (Document No. 12, pp. 9-10). Top Tier allegedly "installed 27 solar panels on the Plaintiffs' home," on January 4 and 5, 2022. Id. Apparently, though, the system "has not been inspected" and "therefore, is not functional." Id. They allege that Top Tier failed to "[s]chedule a date for inspection of Plaintiffs' solar system with" the city of Gastonia and "[s]ubmit an interconnection request to" Duke Energy. Id. They allege that they have paid and continue to pay "their Solar loan and Duke Energy payment, each month, since March 2022," without reimbursement from Top Tier. Id. Plaintiffs contend that these failures constitute a breach of contract of the Installers Contract. Id. at p. 23. Further, they contend that they are entitled to injunctive relief against Top Tier for "the submitting of forms, documents, or applications, the transfer of warranty to a reputable solar company, and the reimbursement of any, and all third parties' solar payments[] and electric bills incurred…until solar panels are functional." Id. at p. 25.

The only relationship that the undersigned can see between these claims and the other claims in the Amended Complaint is that Plaintiff Andrew O'Darius Rollinson is the son of the Rollinson parents and was involved in the sale of the Top Tier solar system that is the subject of the parents' claims. Other than that connection, the claims are entirely unrelated – Plaintiff Andrew O. Rollinson's claims are employment-related, while the Rollinson parents' claims are straightforward state law claims arising from a sales contract gone wrong. For this reason, the undersigned respectfully recommends that the Rollinson parents' claims be dismissed for lack of subject-matter jurisdiction. "[I]f a district court has valid jurisdiction over a federal claim, it has the discretion to exercise supplemental jurisdiction over additional state claims if they 'derive from

a common nucleus of operative fact' such that the plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.'" Acker v. States Mortgage Co., Inc., 3:20-CV-247-FDW-DCK, 2020 WL 4698809, at *3 (W.D.N.C. Aug. 13, 2020) (quoting United Mine Workers of America v. Gibbs, 383 U.S. 715, 725-26 (1966)); see also 28 U.S.C. § 1367(a) ("the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution"). The Court should decline to exercise supplemental jurisdiction over claims nine and twelve – state law claims – because they do not derive from a common nucleus of operative fact as the federal claims brought by Plaintiff Andrew O'Darius Rollinson.

**Claim Ten: Embezzlement**

Plaintiff's tenth claim is for embezzlement in violation of N.C. Gen. Stat. § 1-538.2 against Defendant Jacob VanWynen. Plaintiff alleges that Defendant Jacob VanWynen "intentionally with[eld Plaintiff's commissions from him]," in order to purchase real estate. (Document No. 12, p. 24). The precise factual details regarding this claim are not clearly alleged, but, as Defendant states, "Rollinson's theory appears to be that Jacob Van[]Wynen is liable for embezzlement because he purchased a home at the same time that Top Tier was withholding a commission owed to Rollinson." (Document No. 20, p. 22).

"To prove theft and embezzlement under North Carolina law a Plaintiff must show" the following: "(1) the defendant, older than 16, acted as an agent or fiduciary for his principal," "(2) he received money or valuable property of his principal in the course of his employment and through his fiduciary relationship," and "(3) he fraudulently or knowingly and willfully misappropriated or converted to his own use the money or valuable property of his principal which

18

he had received in a fiduciary capacity." Sunbelt Rentals, Inc. v. Second Life Equip., LLC, 5:20-CV-070-KDB-DSC, 2022 WL 791416, at *3 (W.D.N.C. Mar. 14, 2022). Thus, in the ordinary set of facts for a successful embezzlement claim, the principal would be the plaintiff and the agent would be the Defendant. In this case, as Defendant points out, "Rollinson does not and cannot allege that Jacob Van Wynen held a fiduciary obligation to Rollinson individually rather than to Top Tier." (Document No. 25, p. 9). For this reason, the undersigned respectfully recommends that Plaintiff's embezzlement claim against Top Tier be dismissed.

**Claim Eleven: Violation of the North Carolina Wage & Hour Act, N.C. Gen. Stat. § 95-25.1 *et seq.***

Plaintiff's eleventh claim is alleged against Top Tier for violation of North Carolina's Wage & Hour Act. Plaintiff alleges that Top Tier "incorrectly paid Rollinson, repeatedly, by its willful disregard of [his] regular payday, and [] paying late, and/or underpaying, and/or illegally withholding commissions, without advanced notice to (or, written authorization from)" Rollinson. (Document No. 12, p. 24). North Carolina's Wage & Hour Act provides "a private right of action to employees for the recovery of unpaid wages." (Document No. 20, p. 22) (citing N.C. Gen. Stat. § 95-25.22)). Defendant advances two arguments in favor of dismissal of this claim: one, that Plaintiff is an independent contractor rather than an employee (and thus, not covered by the law); and two, that he "fails to adequately allege that he earned the $51,300 in hourly pay he claimed to be owed under Top Tier's [] pay structure." (Document No. 20, pp. 22-23).

With respect to the first argument, the undersigned has already concluded in an earlier section that Plaintiff has alleged sufficient facts to create a plausible argument that he was an employee of Top Tier rather than an independent contractor. See supra pp. 13-14. At this early stage of the proceedings, without the benefit of discovery, the undersigned concludes that it is at

least plausible that Plaintiff Rollinson was a covered employee under North Carolina's Wage & Hour Act, especially considering "the economic realities of the relationship, and the extent of Defendant's control over Plaintiff." Church v. Home Fashions Intern., LLC, 5:10-CV-133-DCK, 879 F. Supp. 2d 498, 506 (W.D.N.C. 2012) (concluding that an individual was a covered employee under North Carolina's Wage & Hour Act at summary judgment) (internal citations omitted).

Defendant's second argument is that Plaintiff does not adequately allege that Plaintiff met the contractual requirements for payment of his wages. See (Document No. 20, p. 24). Defendant contends: "to be eligible for hourly pay, the sales representative must achieve at least three sit down meetings with a homeowner per week." Id. at p. 24. According to Defendant, "Rollinson does not allege that he achieved three sit down meetings in any week that he worked for Top Tier," and therefore, "[h]is claim for $51,300 in hourly pay should [] be dismissed." Id. Respectfully, the undersigned disagrees. This is not summary judgment, no discovery has been performed, and according to Plaintiff's Amended Complaint, "[a]t all relevant times, Plaintiff Rollinson met, or exceeded employer's expectations." (Document No. 12, p. 16). At this early stage of the litigation, the undersigned respectfully recommends that the motion to dismiss Plaintiff's Wage & Hour Act claim be denied.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Defendants Top Tier Solar Solutions, LLC, Jacob P. Van Wynen, Samuel Van Wynen, Mark Wagoner, Jacob Hovley, Anthony Feick, and Pete Van Wynen's "Motion To Dismiss Plaintiffs' Amended Complaint" (Document No. 19) be **GRANTED in part** and **DENIED in part**. Specifically, the undersigned recommends that all claims be dismissed except for the section 1981 race discrimination claim against Top Tier, Samuel VanWynen, and Jacob Hovley (the section

1981 claim against Pete VanWynen should be dismissed), the hostile work environment claim against Top Tier and Samuel VanWynen, and the North Carolina Wage and Hour Act claim against Top Tier.

**IT IS FURTHER RECOMMENDED** that "Defendant Austin Taylor's Motion To Dismiss" (Document No. 21) be **GRANTED**.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same.  Responses to objections may be filed within fourteen (14) days after service of the objections.  Fed.R.Civ.P. 72(b)(2).  Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  Id.  "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'"  Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: March 22, 2024

David C. Keesler
United States Magistrate Judge